IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER BEST, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY )<br>)<br>Defendant. ) | Civil Action No. 07-1222 |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 8 and 12). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 9 and 13). Plaintiff has filed a reply brief. (Docket No. 14). After careful consideration of the submissions of the parties, and for the reasons discussed below, Defendant's Motion (Docket No. 12) is granted and Plaintiff's Motion (Docket No. 8) is denied.

### I. BACKGROUND

Plaintiff has brought this action under 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401-433.

On April 30, 2004, Plaintiff protectively filed the instant application for DIB alleging disability since October 1, 2003, due to severe allergy attacks and bone aches. (R. 45-47, 75). The state agency denied Plaintiff's claim. (R. 29-34). Plaintiff requested a hearing. (R. 35-36). Administrative Law Judge William E. Kenworthy ("ALJ") held a hearing on March 16, 2006, at which time Plaintiff, who was represented by counsel, and a vocational expert testified. (R. 313-

339). On July 11, 2006, the ALJ denied Plaintiff's claim for benefits finding that the Plaintiff is not disabled under the Act. (R. 15-22). The Appeals Council denied Plaintiff's request for review. (R. 5-8). After thus exhausting her administrative remedies, Plaintiff filed the instant action.

The parties have filed cross-motions for summary judgment. The Plaintiff raises two main issues on appeal. First, she claims that the prior ruling was not supported by substantial evidence because the ALJ did not give controlling weight to the opinion of her primary care physician, Dr. Harvey. Second, she contends that the hypothetical question posed to the Vocational Expert ("VE") was deficient because it did not include the limitations set forth by Dr. Harvey.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in a social security case is whether substantial evidence exists in the record to support the Commissioner's opinion. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, if the Commissioner's findings of fact are supported by substantial evidence, they must be accepted as conclusive. 42 U.S.C. 405 (g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional facts from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. Fargnoli v. Massarini, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

To demonstrate disability and eligibility for social security benefits under the Act, the plaintiff must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986). When resolving the issue of whether a claimant is disabled and whether a claimant is entitled to DBI benefits, the ALJ applies a five step analysis. 20 C.F.R. § 404.1520 (a).

The ALJ must determine: (1) whether the claimant is currently engaging in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment whether it meets or equals the criteria listed in 20 C.F.R. pt. 404. subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. In all but the final step, the burden of proof is on the claimant. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); 42 U.S.C. §§ 416(1), 423(d)(1)(A).

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

B. The Rejection of Dr. Harvey's Findings

Best first argues that the prior decision is not supported by substantial evidence because the ALJ did not give controlling weight to Dr. Harvey's conclusion that she was disabled. The Commissioner's position is that Dr. Harvey's conclusion was not persuasive because it did not

3

meet the durational requirement set forth in the regulations, it was contradicted by his own treatment record, and it was not supported by other medical evidence in the record. Having thoroughly reviewed the record, I agree with the Commissioner.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 422, 429 (3d. Cir. 1999), quoting, Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). However, for controlling weight to be given to the opinion of a treating physician that opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence." 40 C.F.R. §1527(d)(2). There are several factors that the ALJ may consider when determining what weight to give the opinion of the treating physician. 40 C.F.R. §1527. They include the examining relationship, treating relationship, supportability, consistency, specialization, and other factors. 40 C.F.R. §1527. Therefore, a treating physician is not entitled to controlling weight in every instance.

In a letter to Best's attorney, Dr. Harvey reported that Best suffers from bronchial asthma, hypertension, GERD, and type 2 diabetes. (R. 299). In addition, he found that Best's most disabling disease is peripheral vascular disease and that it is necessary for Best to elevate her legs above heart level at least four times daily. (R. 299). Dr. Harvey also completed a functional capacity evaluation indicating that Best is only capable of lifting up to ten pounds occasionally, can sit for up to an hour with rests, and has limitations in performance of activities and other physical functions. (R. 273-274). Based on this evaluation, Dr. Harvey concluded that

4

Best was one hundred percent disabled and could not work. (R. 274). However, the record as a whole does not support this conclusion.

The record contradicts Dr. Harvey's opinion that Best is disabled and therefore unable to work. As indicated in the record, Best began reporting leg pain in February 2005. (R. 227). In November 2005, a Doppler study of Best's legs was largely normal and was only suggestive of "probable minimal occlusive disease in the left anterior and posterior tibial arteries" in her left leg.[1] (R. 272, 288, 296). On November 18, 2005, a CTA study of the lower extremities was performed and the superficial femoral arteries were found to be small in caliber with approximately 80% stenosis and some development of collateral circulation. (R. 280-281). While the CTA findings presumably led to the scheduling of surgery for April 11, 2006, the ALJ was correct in observing that Dr. Harvey's records fail to indicate that any specific disabling limitations were evident in Best through her course of treatment or that any such limitations would not have been remedied by the surgery. (R. 171-80, 221-49, 275-91).

In fact, the first disabling functional limitations were recorded by Dr. Harvey in a functional capacity evaluation on January 1, 2006. (R. 273-274). It is well settled that "standing alone...a physical capacities evaluation form is not substantial evidence." Green v. Schweiker, 749 F.2d 1066, 1071 n.7 (3d Cir. 1984). However, if these forms are supported by thorough written reports, they may be used to determine work capabilities. Green, 749 F.2d at 1071. As was stated above, no specific disabling limitations were explained or supported by the medical

---

[1] Plaintiff correctly indicates that the ALJ inaccurately referred to multiple Doppler studies stating that "subsequent arterial Doppler studies have been essentially normal." (R. 20). In fact, although it appears multiple times in the record, only one Doppler study was performed in November of 2005. However, the "essentially normal" results of the study were correctly utilized in the ALJ's analysis and therefore the error is harmless. (R. 272, 288, 296).

5

records kept by Dr. Harvey and the functional capacity form alone was not enough to support the information contained within it. (R. 171-80, 221-49, 275-91).

Additionally, besides Dr. Harvey, no other treating physician reported such extensive physical limitations and disability. In fact, Dr. Fugate, a treating orthopaedic surgeon, reported that Best has normal station and gait; essentially normal range of motion, joint stability, alignment, strength, tone and neurovascular status; full range of motion in her neck; symmetric reflexes between the right and left sides and elbows and wrists; and grossly intact light touch sensation in the hands. (R. 165-166). Likewise, Dr. Huston, while noting that Best experienced leg pain, reported that Best had dopperable pulses in both feet, although not of the best quality; no edema, and "no sign of venous disease of either lower leg." (R. 268). In a follow up visit, Huston noted that doppler pulses "were easily audible in the right foot, although quite weak"; pulses on the anterior and posterior tibial were audible but much weaker than they had been; and that there were no changes of impending ischemia. (R. 267). Neither doctor suggested disabling limitations brought on by the leg pain. (R. 165-166, 267, 268).

Finally, Dr. Harvey's opinion of disability does not comport with the twelve month requirement set forth in the Act. 42 U.S.C. § 423 (d)(1)(A). The first mention of Best having peripheral artery disease was in February of 2005. (R. 275). However, despite what Best contends, no notation is made in the record of any disabling limitations stemming from the disease at this time. In fact, even after the CTA was performed showing difficulty with the superficial femoral arteries no mention of disabling functional limitations was made in any of Dr. Harvey's records. (R. 280-281). The first mention of Best needing to elevate her legs above heart level at least four times daily was made in a March 29, 2006 letter to Best's attorney. (R. 299). Once the surgery was scheduled for April of 2006, no indications were given that the

limitation requiring elevating her legs would not be alleviated. Therefore, the ALJ was correct in determining that the need to elevate her legs above her heart would not persist for a continuous period of at least 12 months from the CTA scan in November of 2005 to November of 2006. (R. 20). Dr. Harvey's opinions were clearly not supported by the record and his opinion of disability was properly rejected.

C. The Hypothetical Question to the VE

Best's second argument is related to the first. She claims that the hypothetical posed to the ALJ was defective because it did not include all of the work-related limitations found by Dr. Harvey.

For the reasons set forth above, the ALJ correctly discounted the conclusions reached by Dr. Harvey. The large majority of the evidence of record fails to support the conclusion that Best must elevate her legs above her heart four times daily. Therefore, the fact that Dr. Harvey's limitation that Best needed to elevate her legs at least four times a day was not included in the ALJ's hypothetical does not render it defective.

## III. CONCLUSION

In conclusion, based of the evidence of the record and the briefs filed in support thereof, I find that the ALJ properly analyzed the evidence and that substantial evidence existed to support the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. As a result, the decision of the ALJ denying disability benefits to Plaintiff will be affirmed.

*******************************

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JENNIFER BEST, )
  )
    Plaintiff, )
  )
 -vs- ) Civil Action No. 07-1222
  )
COMMISSIONER OF SOCIAL )
SECURITY )
  )
    Defendant. )

AMBROSE, Chief District Judge.

# ORDER OF COURT

AND NOW, this 13th day of June, 2008, it is Ordered that Defendant's Motion for Summary Judgment (Docket No. 12) is GRANTED. Plaintiff's Motion for Summary Judgment (Docket No. 8) is DENIED. Judgment is entered in favor of Defendant and against Plaintiff. This case is closed forthwith.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose,
Chief U.S. District Judge